# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

LIBERTY MUTUAL INSURANCE
COMPANY AND GREAT AMERICAN
INSURANCE COMPANY,

     *Plaintiffs,*

v.

ORLANDO MUSEUM OF ART, INC.,
AND PIERCE O'DONNELL, TARYN
BURNS, AND WILLIAM FORCE,
AND BASQUIAT VENICE
COLLECTION GROUP, AN
UNREGISTERED DE FACTO
PARTNERSHIP,

     *Defendants.*

CASE NO. 6:24-cv-02180-PGB-RMN

---

## ANSWER TO DECLARATORY JUDGMENT COMPLAINT

Pierce O'Donnell, Taryn Burns, William Force, and Basquiat Venice Collection Group ("BVCG Defendants") respond to the Complaint filed by Plaintiffs Liberty Mutual Insurance Company and Great American Insurance Company ("Plaintiffs") as follows:

BVCG Defendants generally deny each and every factual allegation in the Complaint except as specifically admitted herein, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, or speculation contained in any averment in the Complaint as a whole. To the extent that any headings, footnotes

and unnumbered paragraphs of the Complaint are constructed as allegations, they are specifically denied. To the extent that the allegations in the Complaint refer to the knowledge, conduct or actions of others, BVCG Defendants lack knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

### Nature of the Case

1. The allegations in Paragraph 1 are not factual allegations to which a response is required but rather are Plaintiffs' description of the action they filed. To the extent a response is required, they are denied.

2. BVCG Defendants admit that the FBI removed the Artworks and that the Artworks remain outside of the BVCG Defendants' care, custody, and control. BVCG Defendants deny all other allegations.

3. Denied.

4. The allegations in Paragraph 4 are not factual allegations to which a response is required but rather are Plaintiffs' description of the action they filed. To the extent a response is required, they are denied.

5. Denied.

6. The allegations set forth in Paragraph 6 are not directed to BVCG Defendants. To the extent a response is required, they are denied.

7. The allegations in Paragraph 7 are not factual allegations to which a response is required. To the extent a response is required, they are denied.

8. The allegations in Paragraph 8 are not factual allegations to which a response is required. To the extent a response is required, they are denied.

## Jurisdiction, Parties and Venue

9. The allegations in Paragraph 9 are not factual allegations to which a response is required. To the extent a response is required, they are denied.

10. The allegations in Paragraph 10 are not factual allegations to which a response is required. To the extent a response is required, they are denied.

11. The allegations in Paragraph 11 are not factual allegations to which a response is required. To the extent a response is required, they are denied.

12. The allegations in Paragraph 12 are not factual allegations to which a response is required. To the extent a response is required, they are denied.

13. The allegations set forth in Paragraph 13 are not directed to BVCG Defendants.

14. The allegations set forth in Paragraph 14 are not directed to BVCG Defendants.

15. BVCG Defendants admit the allegations set forth in Paragraph 15 regarding Defendant Pierce O'Donnell's residency and principal status in the BVCG partnership. BVCG Defendants deny the remainder of Paragraph 15.

16. Denied.

17. BVCG Defendants admit the allegations set forth in Paragraph 17 regarding Defendant Taryn Burns's residency and principal status in the BVCG partnership. BVCG Defendants deny the remainder of Paragraph 17.

18.    Denied.

19.    BVCG Defendants admit the allegations set forth in Paragraph 19 regarding Defendant William Force's residency.  BVCG Defendants deny the remainder of Paragraph 19.

20.    Denied.

21.    BVCG Defendants admit that BVCG is a joint venture with its principal place of business in California.  BVCG Defendants deny the remainder of Paragraph 21.

22.    Denied.

23.    The allegations set forth in Paragraph 23 are not directed to BVCG Defendants.

24.    The allegations set forth in Paragraph 24 are not directed to BVCG Defendants.

25.    The allegations set forth in Paragraph 25 are not directed to BVCG Defendants.

26.    The allegations in Paragraph 26 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

27.    The allegations in Paragraph 27 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

**Facts**

**The "Mumford Collection"**

28.    Admitted.

- 4 -

29.    Denied.

30.    Denied.

31.    Admitted.

32.    Denied.

33.    Admitted.

**The Sale of the Storage Locker and the Initial Purchase of the Collection**

34.    Admitted as to the factual assertions, denied as to the argumentative statement.

35.    Admitted as to the factual assertions, denied as to the argumentative statement.

36.    Denied.

37.    Denied.

38.    Admitted.

39.    Admitted.

40.    BVCG Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and denies same.

41.    Denied.

42.    Denied.

43.    Denied.

44.    BVCG Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 and denies same.

45.    Denied.

46.     BVCG Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 and denies same.

**BVCG is Created to Market and Sell Six Works from the Mumford Collection**

47.     Admitted.

48.     Admitted.

49.     Admitted.

50.     Admitted.

51.     Admitted.

52.     Admitted.

53.     Admitted.

54.     Admitted as to the factual assertions, denied as to the argumentative statement.

55.     BVCG Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 and denies same.

**BCVG and the OMA Begin Discussions Concerning an Exhibition of the Paintings**

56.     Denied.

57.     Admitted.

58.     Denied.

**Red Flags Begin to Appear Around the Mumford Collection**

59.     Denied.

60.   BVCG Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 and denies same.

61.   BVCG Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 and denies same.

62.   Denied.

63.   The allegations set forth in Paragraph 63 are not directed to BVCG Defendants.

64.   BVCG Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 and denies same.

65.   BVCG Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 and denies same.

**BVCG's Loan and Insurance of the Mumford Collection**

66.   Admitted that the loan agreement was entered on or about October 20, 2021 between OMA and Basquiat Venice Collection Group, c/o Pierce O'Donnell and Taryn Burns.

67.   Admitted to the extent the loan agreement required OMA to obtain insurance for the Artworks, however, denied as to the remainder as it was Plaintiffs' decision to provide such insurance.

68.   Denied.

69.   Denied.

70.   Admitted.

71.   Denied.

72.     Denied.

73.     The allegations set forth in Paragraph 73 are not directed to BVCG Defendants.

74.     The allegations set forth in Paragraph 74 are not directed to BVCG Defendants.

75.     BVCG Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 and denies same.

76.     Denied.

**The FBI Investigation**

77.     Denied.

78.     Denied.

79.     Admitted regarding removal of the Artworks by the FBI in June 2022. Denied as to the remainder of Paragraph 79.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.    BVCG Defendants deny the allegations set forth in Paragraph 87 to the extent they refer to the paintings as "counterfeits."  BVCG Defendants admit that they submitted an insurance claim.

88.    Denied.

89.    Denied.

**The Policy**

90.    Admitted that the Policy is subject to all of its terms and must be read in its entirety.

91.    Admitted that OMA's address, the Named Insured, is identified in the Policy as in Orlando, Florida.  BVCG's address, as an Additional Insured, is identified as in Encino, California.

92.    BVCG Defendants admit the Policy generally provides the described coverage, but states that the Policy must be read in its entirety.

**Plaintiffs' Reservation of Rights**

93.    Admitted that BVCG Defendants submitted a claim relating to the total loss of the Artworks.

94.    Admitted that Plaintiffs issued a reservation of rights letter, which must be read in its entirety.

95.    The allegations in Paragraph 95 are not factual allegations to which a response is required.  To the extent a response is required, it is denied.

96.    Denied.

97.    Denied.

98.    Denied.

99.    Denied.

## Claims for Relief

### Count I: Declaratory Judgment

100.    The allegations in Paragraph 100 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

101.    The allegations in Paragraph 101 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Denied.

107.    The allegations in Paragraph 107 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

108.    The allegations in Paragraph 108 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

109.    Denied.

### Count II: Declaratory Judgment

110.    The allegations in Paragraph 110 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

111.    The allegations in Paragraph 111 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

112.    Denied.

113.    Denied.

114.    The allegations in Paragraph 114 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

115.    Admitted.

116.    The allegations in Paragraph 116 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

117.    The allegations in Paragraph 117 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

118.    Denied.

## Count III: Declaratory Judgment

119.    The allegations in Paragraph 119 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    The allegations in Paragraph 126 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

127.    The allegations in Paragraph 127 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

128.    The allegations in Paragraph 128 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

129.    The allegations in Paragraph 129 are not factual allegations to which a response is required.  To the extent a response is required, they are denied.

130.    Denied.

## AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE

The Complaint, and each claim for relief alleged therein, fails to state facts sufficient to state a claim upon which relief can be granted against BVCG Defendants.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims fail because, by its acts and/or omissions, Plaintiffs breached the Policies, as more fully described in the counterclaim below.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs do not have a ripe controversy against BVCG Defendants.

- 12 -

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for recovery are barred based on operation of the terms, provisions, conditions and/or exclusions of the relevant contracts and/or insurance policies.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unjust enrichment.

### SIXTH AFFIRMATIVE DEFENSE

The relief sought by Plaintiffs, is barred by the doctrine of laches, doctrine of estoppel and/or unclean hands.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs drafted the Policies, and to the extent the Policies are ambiguous they must be interpreted to the extent possible in favor of coverage and against the drafter thereof.

### EIGHTH AFFIRMATIVE DEFENSE

By their own conduct and actions, Plaintiffs have waived some or all of the claims or rights, if any, that Plaintiffs may have against BVCG Defendants.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate and/or reduce their damages and losses, if any.

## TENTH AFFIRMATIVE DEFENSE

BVCG Defendants reserve the right to the extent fully permitted by law, to amend or supplement their answers and defenses herein, including to assert upon such other and further defenses as may become apparent or available in response to the incorporated counterclaim.

## COUNTERCLAIM FOR BREACH OF CONTRACT

Pierce O'Donnell, Taryn Burns and Basquiat Venice Collection Group ("BVCG") (collectively, the "Additional Insureds") hereby sue Liberty Mutual Insurance Company and Great American Insurance Company (the "Insurers") as follows:

## NATURE OF ACTION

1. This is an action for breach of contract arising out of Insurers' refusal to pay amounts due and owing under a Museum Collection and Temporary Loans policy (the "Policy") issued to the Additional Insureds for a covered loss.

2. The Policy provides coverage for six artworks attributable to the late Jean-Michel Basquiat (the "Artworks"), all of which are owned by BVCG and which, at the time of the loss, were on loan to the Orlando Museum of Art ("OMA") for its exhibition entitled *Heros & Monsters*, which opened in February 2022. Each of the Artworks is separately insured under the Policy for a total agreed value of $19,700,000.

| | |
|---|---|
|  | **EXH.2021.05.01**<br>**JEAN-MICHEL BASQUIAT**<br>*One More King-Czar*<br>1982<br>Mixed media on cardboard<br>9 ½ x 10 in.<br>Basquiat Venice Collection Group<br><br>Insurance Value: $2,400,000 |
|  | **EXH.2021.05.02**<br>**JEAN-MICHEL BASQUIAT**<br>*He Didn't*<br>1982<br>Mixed media on cardboard<br>20 x 25 in.<br>Basquiat Venice Collection Group<br><br>Insurance Value: $4,900,000 |
|  | **EXH.2021.05.03**<br>**JEAN-MICHEL BASQUIAT**<br>1982<br>*Horn*<br>Mixed media on cardboard<br>20 x 25 in.<br>Basquiat Venice Collection Group<br><br>Insurance Value: $2,800,000 |
|  | **EXH.2021.05.04**<br>**JEAN-MICHEL BASQUIAT**<br>*Batman with Top-Hat*<br>1982<br>Mixed media on board<br>12 x 12 in.<br>Basquiat Venice Collection Group<br><br>Insurance Value: $3,500,000 |

- 15 -

| | |
|---|---|
|  | EXH.2021.05.05<br>JEAN-MICHEL BASQUIAT<br>*Colorful Face*<br>1982<br>Mixed media on cardboard<br>8 x 11 in.<br>Basquiat Venice Collection Group<br><br>Insurance Value: $1,200,000 |
|  | EXH.2021.05.06<br>JEAN-MICHEL BASQUIAT<br>*Reptile with Claws and Crown "King of Creatures"*<br>1982<br>Mixed media on cardboard<br>15 x 14 5/8 in.<br>Basquiat Venice Collection Group<br><br>Insurance Value: $4,900,000 |
|  | EXH.2021.05.07<br>JEAN-MICHEL BASQUIAT<br>*Mystery Creature*<br>1982<br>Mixed media on cardboard<br>15 x 14 5/8 in.<br>Basquiat Venice Collection Group<br><br>Insurance Value: On back of Reptile with Claws and Crown "King of Creatures" |

3.    Although Insurers were free to perform any due diligence they deemed necessary prior to insuring the Artworks, Insurers never communicated with the Additional Insureds about the Artworks or requested any information about the Artworks, and the Additional Insureds never made any representations to Insurers about the authenticity of the Artworks. On information and belief, Insurers never communicated with OMA about the authenticity of the Artworks or

requested any information about the Artworks, and OMA never made any representations to Insurers about the authenticity of the Artworks.

4.      In June 2022, while on display at OMA, the Artworks were removed from the walls of OMA by the FBI and, to this day, remain entirely outside of the Additional Insureds' possession and control.  The FBI has told BVCG that it will never return the Artworks to BVCG.  When it became apparent to the Additional Insureds that the Artworks were irretrievably lost, the Additional Insureds submitted an insurance claim to Insurers.

5.      Despite the Additional Insureds' extensive cooperation with Insurers' "investigation" of the insurance claim, including by providing thousands of pages of documents in response to Insurers' requests for information and submitting to three examinations under oath, Insurers refused to indemnify the Additional Insureds' for the loss and instead initiated a lawsuit seeking a declaration that they have no obligation under the Policy to indemnify the Additional Insureds for the Artworks, which amounts to a constructive denial of their insurance claim.

## **PARTIES, JURISDICTION AND VENUE**

6.      Pierce O'Donnell is an individual who has his primary place of residence in Texas and is a principal of the unregistered *de facto* partnership BVCG.

7.      Taryn Burns is an individual who has her primary place of residence in California and is a principal of the unregistered *de facto* partnership BVCG.

8. Defendant BVCG is a joint venture and thus a *de facto* partnership and has its

principal place of business in California.

9. At all material times, plaintiff Liberty Mutual Insurance Company was and is incorporated under the laws of Massachusetts, with a principal place of business at 175 Berkeley Street, Boston, MA 02116, is authorized to do business and issue policies in the state of Florida and is engaged in the business of providing insurance coverage to Florida businesses.

10. At all material times, plaintiff Great American Insurance Company was and is incorporated in Ohio, is authorized to do business and issue policies in the state of Florida and is engaged in the business of providing insurance coverage to Florida businesses.

11. This Court has jurisdiction over this action as the amount in controversy exceeds $75,000.00 exclusive of interest, attorneys' fees and costs and pursuant to 28 U.S.C. Section 1332, as the parties are resident in and citizens of different states.

12. Venue is proper in this district because the subject insured property was located in this district at the time of loss, the subject insurance policy was issued for delivery in this district; Insurers actively conduct business in this district; and a substantial part of the events or omissions giving rise to this dispute between the parties occurred in this district.

## BACKGROUND

### I.    The Additional Insureds Loan The Artworks To OMA.

13.    In or around March 2021, Mr. O'Donnell was  first contacted by OMA to discuss the possibility of loaning art to OMA for future exhibitions.

14.    In October 2021, OMA and the Additional Insureds entered into a Loan Agreement whereby the Additional Insureds agreed to loan the Artworks to OMA for exhibition from October 1, 2021 to June 30, 2022 (the "Loan Agreement").  A copy of the Loan Agreement is attached as **Exhibit A**.

15.    BVCG loaned the Artworks to OMA for no fee, and OMA paid for all shipping, insurance, installation, catalogue preparation and printing along with other expenses for the exhibition.

16.    With respect to insurance, the Loan Agreement provides, in pertinent part, that "[OMA] will be responsible for the insuring of all works while in transit to and from the borrowing institution or individual and throughout the entire loan period, whether on display or in storage.  The object(s) will be insured in the amount specified on the face of this document which must reflect fair market value."

17.    The Loan Agreement sets forth the insurance values of each of the Artworks, which were derived from an appraisal performed by Putnam Fine Art and Antique Appraisals and issued on or around September 17, 2020.

## II.   The Insurance Policy.

18.   BVCG had no involvement in procuring the insurance coverage for the Artworks, provided no information to Plaintiffs in connection with the procurement of the Policy, and made no representations to Plaintiffs regarding the Artworks or otherwise.

19.   Insurers issued a Museum Collection and Temporary Loans policy for the July 20, 2021 through July 20, 2022 policy period (the "Policy"). Liberty Mutual subscribed to 60% of the Policy pursuant to policy number FAA206070001. Great American subscribed to 40% of the Policy pursuant to ART E743620-00-00. A copy of the Policy is attached as **Exhibit B**.

20.   The Policy provides broad coverage for "[a]ll risks of direct physical loss or damage from any external cause, except as hereinafter excluded."

21.   The Named Insured of the Policy is OMA.

22.   A Certificate of Insurance for the Policy was issued to Mr. O'Donnell and Taryn Burns (the "Certificate"), which insures the Artworks from October 1, 2021 to June 30, 2022. A copy of the Certificate is attached as **Exhibit C**.

23.   The Certificate states "[i]t it understood and agreed that the certificate holders and managing partners of the Basquiat Venice Collection Group are added onto the insurance policy as Additional Insured as their respective interests appear in the artwork represented in this certificate of insurance." The Policy also states that "Owners and lenders of Property Insured under this policy shall be Loss Payees and/or Additional Insureds, as their respective interests may appear."

- 20 -

24.     The Certificate sets forth the agreed values of each of the Artworks, for a total Limit of Liability of $19,700,000.

25.     With respect to "Basis of Valuation", the Policy provides:

> It is understood and agreed that in event of loss or damage hereunder, all property coming under the protection of this insurance shall be valued at and insured hereunder as follows:
> . . .
>
> b) Property of others loaned to the Insured, and which the Insured has been instructed to insure or for which the Insured may be liable, shall be valued at amounts agreed upon by the Insured and owners, or otherwise the Insurer shall not be liable beyond the current market value of the property at the time any loss or damage occurs and in no event for an amount in excess of that specified in the policy.  Ascertainment or estimate of loss shall be made by the Insured and the Insurer, or if they differ then the amount of loss will be determined as provided by the Arbitration Clause of the policy.

### III.   The Exhibition And The FBI's Removal Of The Artworks.

26.     In February 2022, OMA opened its exhibition entitled *Heroes & Monsters*, featuring the Artworks and various other paintings.  An elaborate exhibition catalog—with essays by art historians, gallerists, curators, and scholars praising the works as authentic Basquiat masterpieces—was prepared.  A copy of the exhibition catalog is attached as **Exhibit D**.

27.     On June 24, 2022, a team of FBI agents removed the Artworks off the OMA's walls.  The removal purportedly was pursuant to a search warrant that purportedly was obtained by submission of an Affidavit by FBI agent Elizabeth Rivas, dated June 22, 2022.

28. Following the removal, the Additional Insureds undertook extensive efforts to cooperate with the FBI in its investigation of the Artworks.

29. In August 2022, Mr. O'Donnell, at his request, voluntarily met with the FBI to provide documentation regarding the provenance of the Artworks and information regarding the numerous Basquiat experts who have scrutinized the Artworks and concurred in their authenticity.

30. Despite the Additional Insureds' substantial efforts to cooperate with the FBI, the Artworks remain entirely outside the Additional Insureds' possession and/or control and there is no prospect for their recovery within a reasonable time, if at all. The FBI has told BVCG that it will never return the Artworks to BVCG.

## IV. The Additional Insureds' Insurance Claim And Insurers' Response.

31. On January 30, 2024, the Additional Insureds submitted an insurance claim to Insurers.

32. On February 26, 2024, BVCG was informed that Insurers had retained insurance coverage counsel.

33. On March 8, 2024, Insurers sent BVCG a "preliminary reservation of rights" and requested information regarding BVCG's claim.

34. On March 30, 2024, BVCG provided a thorough response and documents to Insurers' requests for information.

35. On September 26, 2024, BVCG provided additional documents in support of its claim.

36.    On November 13, 15, and 16, 2024, Insurers conducted examinations under oath of three of BVCG's representatives – Mr. O'Donnell, Ms. Burns, and Mr. Force.

37.    The following day, on November 17, 2024, Insurers initiated a declaratory relief action against BVCG and to this date have refused to pay BVCG's insurance claim.

## COUNT 1 – BREACH OF CONTRACT

38.    The Additional Insureds re-alleges Paragraphs 1 through 37.[1]

39.    The Policy constitutes a valid, binding and enforceable contract between the Parties.

40.    The Policy was in full force and effect at all relevant times.

41.    The Policy obligates Insurers to indemnify the Additional Insureds for "a]ll risks of direct physical loss or damage from any external cause, except as hereinafter excluded."

42.    By failing to pay the full agreed value of the Artwork, Insurers are in breach of the Policy.

43.    As a result of Insurers' breach(es), the Additional Insureds have sustained substantial damages and will continue to sustain substantial damages, including, but not limited to deprivation of the due insurance proceeds, interest, and attorney's fees and costs associated with this action.

---

[1] BVCG reserves the right to amend this Counterclaim to allege further and additional facts for various reasons, including but not limited to unforeseen or unknown facts or new information.

WHEREFORE, the Additional Insureds respectfully requests that this Court enter judgment in his favor, awarding damages, pre- and post-judgment interest, attorneys' fees and costs under Sections 627.428 and/or 626.9373, Florida Statutes, and any other relief this Court deems just, equitable and proper.

Dated: January 30, 2025

Respectfully submitted,

REED SMITH LLP

By:   */s/ R. Hugh Lumpkin*
**R. Hugh Lumpkin** (SBN 0308196)
hlumpkin@reedsmith.com
**Jessica E. Gopiao** (SBN 1011789)
jgopiao@reedsmith.com
REED SMITH LLP
200 S Biscayne Blvd
Suite 2600
Miami, FL  33131
Telephone: +1 786 747 0200
Facsimile: +1 786 747 0299

**David E. Weiss** (*pro hac vice*)
dweiss@reedsmith.com
**Casey A. Loosbrock** (*pro hac vice*)
cloosbrock@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

**Katherine J. Ellena** (*pro hac vice*)
kellena@reedsmith.com
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA  90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

*Attorneys for Defendants,
Basquiat Venice Collection
Group, Pierce O'Donnell,
Taryn Burns, and William
Force*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January, 2025, I electronically

filed a true and correct copy of the foregoing with the Clerk of Court and the parties

of record by using the CM/ECF system.

*/s/ R. Hugh Lumpkin*
**R. Hugh Lumpkin**